1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARSHALL NAIFY REVOCABLE
TRUST, et al.,

        Plaintiffs,

  v.

UNITED STATES OF AMERICA,

        Defendant.

_____/

No. C 09-1604 CRB

**ORDER GRANTING MOTION FOR
JUDGMENT ON THE PLEADINGS**

     The Marshall Naify Revocable Trust and related parties (collectively, "the Estate")

bring this suit seeking a refund of estate taxes.  The Estate argues that it "has overpaid

federal estate tax and interest in the amount of at least $11,945,910."  Compl. ¶ 39.  This

argument is based on the Estate's contention that when Marshall Naify ("the Decedent," or

"Naify") passed away, he owed millions of dollars in taxes to the State of California based on

capital gains realized by Mimosa, Inc. ("Mimosa"), a corporation created by Naify.  Id. ¶¶ 7,

17.  The Estate argues that it was entitled to deduct the value of these taxes from the gross

value of the estate even though it ultimately entered into a settlement with the California

authorities by which the Estate paid only $25,959,992.  Id. ¶ 22.  The Government disagrees

and argues that the Estate was already permitted to deduct the true value of the claim,

namely, the $25,959,992 settlement.  The Government has therefore moved for judgment on

the pleadings.

For the following reasons, this Court GRANTS the Government's motion.  First, this Court concludes that the value of the disputed claim was not ascertainable with reasonable certainty on the date of the Decedent's death.  Therefore, it was not deductible under 26 C.F.R. § 20.2053-1(b)(3) (2008), which provides that "[n]o deduction may be taken upon the basis of a[n] . . . uncertain estimate."  Second, 26 C.F.R. § 20.2053-1(b)(3) also provides that only an estimated claim that "will be paid" may be deducted.  While this phrase has not been exhaustively interpreted by courts, this Court concludes that the Estate's claimed refund fails to satisfy that standard.  Third, Ninth Circuit precedent suggests that, in this type of case, the IRS is permitted to consider post-death events in assessing the value of a claim.  Fourth, and finally, based upon positions taken by the Estate leading up to its settlement of its tax liability with California, the Estate is judicially estopped from seeking relief based upon an irreconcilable position.

For all these reasons, Defendant's motion for judgment on the pleadings is granted.

## Background

The essential facts of this case are not in dispute.  On February 3, 1997, Marshall Naify created the Marshall Naify Revocable Trust, which is the successor in interest to the assets of the Estate of Marshall Naify.  Id. ¶¶ 7, 13.  On December 18, 1998, Naify formed Mimosa, a wholly-owned Delaware investment corporation with offices in Delaware and, as of early 1999, in Reno, Nevada.  Id. ¶¶ 7-8.  Some time later in December of 1998, Naify contributed notes convertible into stock of Telecommunications, Inc. ("TCI") to Mimosa, and those notes were converted into stock in early 1999.  Id. ¶ 9.  The transaction was taxable for federal income tax purposes, but Plaintiff hoped to avoid California income tax "by virtue of having Mimosa, a non-California corporation, exercise the notes."  Id. ¶ 9.  In fact, Mimosa had been set up in the hope that any capital gains it realized would avoid California taxes.  Id., ex. C, at 9, ¶ 13.[1]  A number of steps were taken to establish Mimosa as a Nevada

---

[1]  Exhibit C to the Complaint is the Estate's Form 843, Claim for Refund and Request for Abatement.  Pages seven through thirty-nine of that Form 843 are specifically incorporated into the Complaint.  See Compl. ¶ 26.  Therefore, they are properly considered on a motion for judgment on the pleadings.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  corporation.  For example, Mimosa obtained legal advice indicating that, in order to prevent

2  California tax on Mimosa's gains, the Chief Operating Office and Chief investment officer

3  "could not live in California and travel to Reno for work."  Id., ex. C, at 11, ¶ 33.  Thereafter,

4  Mimosa moved its principal office to Reno.  Id., ex. C, at 12.  Individuals related to the

5  Estate recognized that it was not "a sure thing that there will not be a Calif[ornia] tax to pay.

6  That is a risk [the decedent] took. . . .  Part of the plan in reducing the risk involves the

7  absolute necessity of not running the corporation from California."  Id., ex. C at 18 (emphasis

8  in original).

9       Naify died testate on April 19, 2000.  Id. ¶ 10.  The estate filed Naify's 1999

10  California income tax return on October 12, 2000.  Id. ¶ 11.  The federal income tax return

11  showed Naify's adjusted gross federal income as $835 Million,[2] but showed a California

12  adjustment downward to $629 Million.  Id.  The reason stated for the California adjustment

13  was that the income in question was "realized by a corporation that is an S Corporation for

14  federal income tax purposes but is a C Corporation for California income tax purposes."  Id.

15  ¶ 11.  Hence, it was the Estate's position that Naify did not owe California tax on that gain.

16  On July 6, 2001, the California Franchise Tax Board ("FTB") issued notice that Mimosa's

17  1999 income tax return had been assigned for examination.  Id. ¶ 14.  On October 2, 2001 the

18  FTB issued notice that Naify's income tax returns for 1998 and 1999 had also been assigned

19  for examination.  Id. ¶ 14.

20       On July 18, 2001, the Estate filed a federal estate tax return.  Id. ¶ 15.  The estate tax

21  return listed Naify's California income tax liability as $62 Million; that amount was entered

22  as the Item 5, Schedule K deduction on the estate's federal tax return as a claim against the

23  estate.  Id. ¶ 17.  The estate had calculated the $62 Million as the likely value of California

24  income tax due on the Mimosa-TCI stock conversion.  Id. ¶ 17.

25       Between July of 2001 and February of 2004, the FTB investigated Naify's 1999 tax

26  return, among other things.  Id., ex. C, at 20-36.  The FTB interviewed witnesses, requested

27  documents, and negotiated with representatives of the Estate.  In February 2004, the Estate

28

---

[2] Dollar amounts are rounded to the nearest $1 Million

and the FTB reached a settlement regarding Naify's California income taxes, agreeing to settle the tax liability for $26 Million. Id. ¶ 22. On March 29, 2004, the IRS allowed $26 Million as the Item 5, Schedule K deduction on the estate tax return, rather than the $62 Million originally claimed by the estate. Id. ¶ 23.

The Estate filed a Claim for Refund, seeking an adjustment of the Item 5, Schedule K deduction to allow for a deduction of $47 Million (the "disputed claim").[3] Id. ¶ 25. The Estate sought a refund for the $11 million of additional tax liability plus interest, for a total of $13 Million. Id. ¶ 25. On February 27, 2007, the IRS denied the claim for refund in full. Id. ¶ 26. The estate then brought this action for Refund of Overpaid Federal Estate Tax, seeking judgment "in the amount of at least $11,945,910, plus interest and costs allowable by law." Id. ¶¶ 27-28.

### Legal Standard

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed. See Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Rule 12(c) is appropriate when "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990). Like a Rule 12(b)(6) motion, the court must accept as true all the non-moving party's material allegations of fact. See Westlands Water Dist. v. Firebaugh Canal, 10 F.3d 667, 670 (9th Cir. 1993); Hal Roach Studios, 896 F.2d at 1550. "A judgment on the pleadings is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir. 1998), cert. denied, 525 U.S. 981 (1998).

//

//

---

[3] Despite a lack of perfect clarity in the Complaint, the Estate has clarified that it does not seek a deduction based on the full $62 million tax liability originally claimed on the return. Doc. 15, at 7. On the contrary, it maintains that only $47 million is deductible, which is "the amount Plaintiff's expert determined to be the total amount of potential liability for tax and penalties given the likelihood of success on the date of death." Id. at 7-8.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**Discussion**

This Court concludes that, for a variety of independent reasons, the Government's motion for judgment on the pleadings must be granted. Before discussing those issues, however, a brief outline of the relevant statute and regulations will be helpful.

**1.      Deductibility of Claims**

Section 2053 of the Internal Revenue Code provides that a "taxable estate shall be determined by deducting from the value of the gross estate such amounts . . . (1) for funeral expenses, (2) for administration expenses, (3) for claims against the estate, and (4) for unpaid mortgages on . . . property" where the total value of the property has been included in the gross value of the estate. 26 U.S.C. § 2053. The parties agree that the provision relevant to this case is subsection three: "for claims against the estate."

Treasury regulations provide further detail about the calculation of such claims. Two regulations in particular, 26 C.F.R. § 20.2053-1 and 26 C.F.R. § 20-2053.4,[4] are pivotal. Section 20.2053-1(b)(3), titled "[e]stimated amounts," provides a limitation on the type of claim that can be deducted on an estate tax return. It indicates that "[a]n item may be entered on the return for deduction though its exact amount is not then known, provided it is ascertainable with reasonable certainty, and will be paid." However, "[n]o deduction may be taken upon the basis of a vague or uncertain estimate." Id. In such a case, where the "liability was not ascertainable at the time of final audit of the return by the district director and, as a consequence, it was not allowed as a deduction in the audit, and subsequently the amount of the liability is ascertained, relief may be sought by a petition to the Tax Court or a claim for refund . . . ." Id. Section 20.2053-4 provides that claims may be deducted only if they "represent personal obligations of the decedent existing at the time of his death, whether or not then matured, and interest thereon which had accrued at the time of death."

---

    [4] As the parties discuss in their briefs, some of the pertinent regulations were amended effective in 2009. See Treasury Decision 9468, 74 Fed. Reg. 53,652 (Oct. 20, 2009). The Government argues that these new regulations, while not directly applicable, "have interpretive value" when considering 26 U.S.C. § 2053. Plaintiff disagrees. Because this Court sides with the Government on other grounds, it does not consider the indirect import of these new regulations. All other citations to Treasury Regulations are to the pre-amendment versions.

**United States District Court**
For the Northern District of California

1

2.      **Ascertainable with Reasonable Certainty**

2      As the above-quoted regulation indicates, an estimated claim can only be entered on a

3    return for deduction if "it is ascertainable with reasonable certainty."  26 C.F.R. § 20.2053-1.

4    The Government argues that the value of the disputed claim was not "ascertainable with

5    reasonable certainty" on the date Naify died and so was not entitled to a deduction.[5]  This

6    Court agrees.

7      Keen awareness of the chronology is important because the only amounts that can be

8    deducted are claims "existing at the time of [decedent's] death."[6]  26 C.F.R. § 20.2053-4.

9    Marshall Naify died on April 19, 2000.  On that date, Mimosa was a C corporation for

10   purposes of California income tax.  Compl. ¶ 11, ex. C, at 13, 18.  As Plaintiff's Complaint

11   makes quite clear, this status was claimed as a means of avoiding California income tax.  Id.

12   ¶ 9; see also ex. C. at 18 ("[Naify] will not report the capital gain on his Calif [sic] return

13   because of its C corp status (note: it is by no means a sure thing that there will not be a Calif

14   [sic] tax to pay.  That is a risk Bob and Marshall took. . . .)").  Mimosa was careful to set up

15   an office in Reno and attempted to ensure that the corporation's officers worked from

16   Nevada and not from California, presumably because it would support Mimosa's status as a

17   legitimate Nevada corporation not subject to California income tax.  Indeed, when Naify's

18   tax return was filed six months after his death, it indicated that the gains resulting from the

19   Mimosa transaction were not attributable to Naify because Mimosa "is a C Corporation for

20   California Income tax purposes."  Id. ¶ 11.  In fact, Plaintiff has represented to this Court that

21

22      [5]   It should be noted that the Complaint does allege that "the amount of Plaintiff's California
     tax liability was ascertainable with reasonable certainty" on the date of Naify's death.  Compl. ¶ 16.
23   Although this Court is bound to accept all factual allegations as true, it is not bound to accept legal
     conclusions.  Because the facts alleged do not support this conclusion, it is not entitled to the
24   presumption of truth.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (2009) ("A court considering a
     motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not
25   entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they
     must be supported by factual allegations").
26

27      [6]  For purposes of this discussion, this Court considers only pre-death events.  As discussed in
     section four, however, this Court does not accept the Estate's argument that it is obligated under Ninth
28   Circuit law to so constrain its analysis.  However, because the Estate's claim fails even assuming its
     interpretation of Ninth Circuit law is correct, and because this Court recognizes that the state of Ninth
     Circuit law is not perfectly clear on this question, this Order will consider both alternatives.

6

United States District Court
For the Northern District of California

before Naify's death, he made an estimated state tax payment that assumed the benefit of the tax shelter scheme.  See Doc. 26, at 10 ("[B]y the payment on April 15, 2000 (four days before his death) of his estimated federal and state taxes, Marshall Naify declared that the $200 million of gain for federal purposes was being excluded for state purposes.").

As the Complaint alleges, by the time Naify died he and his associates had expended considerable effort to establish Mimosa as a legitimate Nevada corporation.  Despite these pre-death efforts and Mimosa's status on the date of death as a Nevada corporation, the Estate now contends that the subsequent (and post-death) failure of this tax plan was sufficiently apparent on the date of death that the amount of the resultant tax was "ascertainable with reasonable certainty."  The facts alleged do not support this conclusion.  On the date of Naify's death, Mimosa had declared itself to be a Nevada corporation, and the Complaint clearly alleges that this was done with the intention of avoiding California income tax.  Therefore, a number of post-death events would have to occur in order for the $61 million tax bill to come due: (1) the state return must be audited, (2) the audit must result in a finding that Mimosa was not a valid Nevada corporation, and (3) the audit must result in a complete payment of the $61 million tax.  This Court concludes as a matter of law that given the efforts undertaken to avoid California income tax before Naify's death and the fact that a number of intervening events must have taken place in order to result in such a claim being realized, the $61 million dollar claim entered on the Estate's return was not "ascertainable with reasonable certainty" and hence was not entitled to deduction.  On the contrary, a range of intermediate values were possible.  If no audit occurred, for example, the claim would be worth nothing.  If the audit concluded that Mimosa was a valid Nevada corporation, the claim would similarly be worth nothing.  If the audit resulted in some settlement of the tax (which the California Franchise Tax Board is authorized to do), the value could have been anywhere between $0 and $61 million.

The Estate disagrees with this conclusion, arguing that (1) a claim need not be fully "mature" to be ascertainable with reasonable certainty, and (2) a claim need not be "reduced

7

to judgment" to be ascertainable with reasonable certainty.  Although this Court is not convinced that these two arguments are conceptually different, it will not belabor the point.

This Court rejects both arguments.  First, the Estate is correct that the regulations provide that a claim can be deductible "whether or not then matured." 26 C.F.R. § 20.2053-4.  But this is not an issue of maturity.  It is not as if all relevant parties agreed that a certain sum would be owed by the Estate, but that the sum would not be due for some period of time, i.e. it was not yet mature.  The facts in this case concern the amount of California income tax Naify owed on the Mimosa transaction and whether, on the date he died, that amount was "ascertainable with reasonable certainty."  Leading up to Naify's death, the Estate hoped it would owe $0.  Compl. ¶ 9.  Nevertheless, they now contend that the "reasonabl[y] certain[]" value was $47 million.  This is not a question of whether the claim had matured, but of the value and existence of the claim.

Second, the Estate's argument that the claim need not be "reduced to judgment" misses the point.  The Estate's lone citation for support in this argument is to <u>Estate of Smith v. Commissioner of Internal Revenue</u>, 198 F.3d 515 (5th Cir. 1999).  However, that case is distinguishable.  In <u>Smith</u>, the Fifth Circuit considered the value of a pending lawsuit against an estate.  Before the decedent's death, Exxon had brought suit against her to recoup an alleged overpayment of royalties.  When she died Exxon's motion for summary judgment was still pending.  The Court granted judgment in favor of Exxon after decedent died, and Exxon argued that the estate owed it $2,482,719.  <u>Id.</u> at 519.  When the estate filed its return, it included a deduction for $2,482,719 for Exxon's demand claim against the estate.  Nine months after the return was filed, the estate settled with Exxon for $681,840.  <u>Id.</u>  The IRS argued that the Estate was not entitled to the $2,482,719 deduction, but instead only to the settlement amount: $681,840.  The Tax Court concluded that the settlement amount "set the value of the Estate's § 2053(a)(3) deduction." <u>Id.</u> at 526.  The Fifth Circuit disagreed, holding that the settlement amount is not, in fact, the dispositive amount.  Instead, the Fifth Circuit remanded with instructions that the Tax Court was not to consider any post-death occurrences.  <u>Id.</u>

United States District Court
For the Northern District of California

1    Smith says nothing regarding how to analyze whether a claim is reasonably certain, as

2   the central issue on appeal was whether a settlement value is the dispositive figure.  Although

3   the Court did mention § 20.2053-1(b)(3)'s requirement that a claim be "ascertainable with

4   reasonable certainty," the Court offered no guidance as to how to make such a determination

5   in a different case.[7]  The Estate would have this Court believe that simply because there was

6   a range of possible values on the date of death, a bench trial is necessary in order to

7   determine the "true" value on the date of death.

8        But it cannot be that simply because one can assign a probability to any event and

9   calculate a value accordingly, any and all claims are reasonably certain and susceptible to

10  deduction.[8]  To so hold would read the regulatory restriction out of existence.  The regulation

11  clearly provides that one can deduct a claim on a return only if it is "ascertainable with

12  reasonable certainty, and will be paid.  No deduction may be taken upon the basis of a vague

13  or uncertain estimate."  26 C.F.R § 20.2053-1.  The regulation therefore explicitly

14  contemplates that some claims will be simply too uncertain to be taken as a deduction,

15  regardless of the fact that it is always possible to come up with some estimate of a claim's

16  value.

17

18

---

19        [7]  The same is true as to other cases cited by the Estate, such as O'Neal v. United States, 258

20  F.3d 1265 (11th Cir. 2001).  That case similarly remands for an evidentiary hearing, apparently
    assuming without discussion that the claim in that case was reasonably certain.  Because that case does

21  not discuss the proper analysis for such a determination, it is of little help here.  See also McMorris v.
    Comm'r of Internal Revenue, 243 F.3d 1254 (10th Cir. 2001).  In O'Neal and Smith it bears noting that

22  the claim in question was more certain than the claim in this case: in both cases the claim at issue had
    been asserted against the decedent by the time of death.  In McMorris the dispute as to the value of the

23  claim only arose because of post-death disagreements as to the value of certain assets.  The dispute in
    this case, however, concerns pre-death facts as well.  In sum, the circuit citations provided by the Estate

24  all focus primarily on the probative value of post-death events.  While that is also a question in this case
    (as discussed below), the issue of "reasonable certainty" is analytically distinct.

25        [8]  To illustrate, imagine an individual is given a lottery ticket for a drawing with a prize valued
    at $100.  Imagine further that only one other lottery ticket was sold, and that the odds of winning stand

26  at 50%.  The expected value of that ticket is therefore $50.  However, this Court does not conclude that
    the "reasonabl[y] certain[]" value of that ticket is therefore $50.  On the contrary, whatever happens,

27  the owner of the ticket will never end up with $50.  She will have either $0 or $100, and there are equal
    odds on both.  This Court therefore concludes that a "reasonably certain" value for purposes of this

28  regulation is not the same thing as an expected value.  If it were, the regulation would make no provision
    for "uncertain" claims because an estate could postulate an expected value for any and all claims.

9

United States District Court
For the Northern District of California

This is just such a claim.  As explained above, the facts alleged in the Complaint reveal that the claim here was not ascertainable with reasonable certainty.  Leading up to Naify's death, he and his associates went to great length to avoid California tax.  When he died, it was uncertain whether he had succeeded or not.  Indeed, the players in the operation were well aware that the plan may or may not succeed.  Therefore, any estimate made at the time of death of the value of the claim was inherently uncertain.  While the Estate is undoubtedly correct that an expert or odds-maker can assign a probability to the relevant intervening facts as of the day of death - (1) the audit, (2) the outcome of the audit, (3) the possibility of settlement - that does not make the expected value reasonably certain.

Indeed, the disputed claim in this case seems tailor-made for the second part of § 20.2053-1, which provides that for uncertain claims "[i]f the amount of a liability was not ascertainable at the time of final audit of the return by the district director and, as a consequence, it was not allowed as a deduction in the audit, and subsequently the amount of the liability is ascertained, relief may be sought by petition to the Tax court or claim for a refund."  In other words, this regulation provides that, for uncertain claims, an estate may obtain the appropriate deduction either during the audit or after the audit via a petition or claim for a refund.  Despite the Estate's invocation of equitable arguments, it is apparent to this Court that this regulation adequately provides for an equitable outcome.  Had the Estate availed itself of this provision, it would have ultimately been entitled to the value of the settlement.  It could have simply informed the IRS that California had an uncertain claim, but that it was not yet ascertainable with reasonable certainty.  If the state audit never happens, then the claim is worthless.  If the audit occurs and Naify is determined to owe taxes, then the Estate can deduct the value of the claim, whatever it may be.  Instead, the Estate went for broke, arguing that it has always been entitled to a deduct a sum that it never paid: $47 million.

Because the Estate alleges facts that show, as a matter of law, that the value of the disputed claim was not ascertainable with reasonable certainty, it is not entitled to a $47 million deduction.

10

1    **2.      Will Be Paid**

2          Section 20.2053-1 requires not only that a claim be "ascertainable with reasonable

3    certainty," but also that the claim "will be paid."  This language must be considered in

4    conjunction with § 20.2053-4, which provides that a claim may be deducted "whether or not

5    [it] matured" by the date of death.  Therefore, while a claim need not be "mature," it "must

6    be paid."

7          Given the facts alleged in the complaint, this Court concludes as a matter of law that

8    even if the value of the claim was "reasonabl[y] certain[]," it was by no means clear on the

9    date of death that the claim would be paid.  Although this Court cannot find any cases

10   flushing out the meaning of "will be paid," the plain meaning of the regulatory language

11   itself precludes permitting a deduction of $47 million on the facts in this case.  Even if one

12   could conclude that the $47 million figure was a reasonably certain estimate, the facts alleged

13   indicate only that the tax bill "might" be paid, not that it would be.  The language appears to

14   be directed at the sort of claim that, although its value is be reasonably certain, may or may

15   not be paid.  In other words, the language excludes claims like this one: had Naify's tax plan

16   been successful (i.e. had California either failed to audit him or concluded that Mimosa was a

17   legitimate Nevada business), he would not have paid <u>any</u> state tax.  On the other hand, if his

18   plan failed, he might pay $61 million in taxes.  Therefore, at the time of death, it was

19   uncertain as to whether the claim "would be paid."  Furthermore, the one calculation of value

20   that almost certainly would <u>not</u> be paid is the value the Estate now seeks to deduct: $47

21   million.  As discussed above, the $47 million figure is the Estate's estimated value based

22   upon the likelihood at the time of his death that Naify's tax plan would fail.  <u>See</u> Doc. 15, at

23   4.  In other words, it is the $61 million discounted by the possibility that the tax plan would

24   in fact avoid California taxes by virtue of Mimosa's status as an out-of-state corporation.

25   <u>See</u> Compl., ex. C at 38, 42.  Such an expected value estimate is not a value that "will be

26   paid," and therefore is not permissible as a deduction.

27         For this reason as well, the Government's motion must be granted.

28   *//*

**United States District Court**
For the Northern District of California

3.      <u>Propstra</u>

The parties focus much of their attention on <u>Propstra v. United States</u>, 680 F.2d 1248 (9th Cir. 1982).  This case is particularly important because not only is it Ninth Circuit authority, it is also one of the few circuit decisions that seems to indicate that post-death events (such as the Estate's settlement with the California Franchise Tax Board) are relevant to the value of a disputed claim.  The Government argues that <u>Propstra</u> settles the issue.  The Estate argues that the pertinent language is mere dicta.

<u>Propstra</u> states that "[t]he law is clear that post-death events are relevant when computing the deduction to be taken for disputed or contingent claims.  Less certain is the relevance of post-death events with regard to claims that are certain and enforceable at the time of death."  <u>Id.</u> at 1253.  The opinion then goes on to discuss the claim at issue in that case, which was a "certain and enforceable" claim.  The Estate argues that because the claim before the Court was not a "disputed or contingent" claim, the opinion's statement of law is mere dicta.  The Government disagrees.

Ninth Circuit authority advises that a prior opinion may not be binding where "a statement is made casually and without analysis, where the statement is uttered in passing without due consideration of alternatives, or where it is merely a prelude to another legal issue that commands the panel's full attention."  <u>United States v. Johnson</u>, 256 F.3d 895, 915-16 (9th Cir. 2001) (en banc) (Kozinski, J., concurring).  However, "any such reconsideration should be done cautiously and rarely-only where the later panel is convinced that the earlier panel did not make a deliberate decision to adopt the rule of law it announced."  <u>Id.</u>  <u>See also</u> <u>United States v. Oshatz</u>, 912 F.2d 534, 540 (2d Cir. 1990) ("[I]n some contexts expressions of views by an appellate court must be regarded as the law of the circuit, even though not an announcement of a holding or even a necessary step in the reasoning leading to a holding.").

Although the Estate raises questions as to the precedential value of <u>Propstra</u>'s comment regarding disputed or contingent claims, this Court cannot conclude that it is mere dicta.  The Estate is correct that the statement is not fully explained, but that does not make it

12

United States District Court
For the Northern District of California

1  non-precedential.  The statement appears to be an interpretation of the cited Treasury

2  Regulation and suggests that because an uncertain claim cannot be deducted, a claim that is

3  disputed at the time of death cannot be deducted until it becomes certain.  Hence,

4  consideration of post-death events is permissible.  Other circuits disagree with this approach,

5  as they are free to, but this Court concludes that the Ninth Circuit has determined that post-

6  death events are relevant for disputed claims.

7       The facts alleged in the complaint reflect that the claim in this case was disputed.  The

8  Estate at no point agreed to pay $61 million, nor did it agree to pay $47 million.  Moreover,

9  discussions between the FTB and the Estate as to Naify's liability went on for years after

10  Naify's death.  The claim was therefore disputed, and consideration of post-death events is

11  permissible under Propstra.  Such events, as alleged in the complaint, corroborate the above

12  conclusion that Estate's complaint must be dismissed.  As explained earlier, the Estate settled

13  its liability with the state for $25,959,992.  Compl. ¶ 22.  Given that the statute permits

14  deduction of the value of the claim, and the fact that the settlement amount settles as a factual

15  matter how much that claim was, in fact, worth, the settlement amount is dispositive.[9]

16       Therefore, the Estate's claim for a refund must fail, and the Government's motion

17  must be granted.

18  **4.      Judicial Estoppel**

19       Finally, the pending motion must be granted because the Estate is judicially estopped

20  from seeking a refund.  Judicial estoppel precludes a party from gaining an advantage by

21  taking one position and then seeking a second advantage by taking an incompatible position.

22  Because judicial estoppel "is intended to protect the dignity of the judicial process, it is an

23  equitable doctrine invoked by a court at its discretion."  Russell v. Rolfs, 893 F.2d 1033,

24  1037 (9th Cir. 1990).

25

26     [9] Plaintiff argues that Propstra only suggests that post-death events are "relevant," not that they
27  are dispositive.  This Court concludes, however, that on the facts of this case, the settlement amount is,
in fact, dispositive.  A settlement is not just a garden-variety post-death event.  It determines as a factual
28  matter how much the claim against the estate is worth and is the only moment at which the value of the
claim becomes "certain."  If post-death events are indeed relevant to contingent claims, a settlement
amount is dispositive.

United States District Court
For the Northern District of California

1    The Ninth Circuit has set forth certain guidelines for application of this doctrine.

2    First, "federal law governs the application of judicial estoppel in federal court." <u>Rissetto v.</u>

3    <u>Plumbers & Steamfitters Local 343</u>, 94 F.3d 597, 603 (9th Cir. 1996).  Second, the doctrine

4    applies even where the prior position was taken in an administrative proceeding, as opposed

5    to a court.  <u>Id.</u> at 604.  Third, even if the prior proceeding does not end with a judgment

6    granted in favor of a party, the doctrine applies in subsequent actions where that party

7    "obtain[s] a favorable settlement."  <u>Id.</u>

8    Beginning with its filing of Naify's 1999 income tax return, the Estate took the

9    position that Mimosa was a legitimate Nevada corporation, which would have avoided the

10   income tax assessment.  Compl. ¶ 11.  The Estate continued to take this position in its

11   subsequent negotiations with the California Franchise Tax Board, else it would not have

12   contested the Tax Board's Notice of Proposed Assessment for 1999.  <u>See</u> Compl. ex. C, at

13   26, 29.  Furthermore, by settling for $26 million, the Estate gained a benefit in an

14   administrative proceeding by taking the position that Mimosa was a Nevada corporation, and

15   that Naify was therefore not susceptible to California tax based upon its dealings.  <u>See</u>

16   Compl. ¶ 22.  The Estate now takes the opposite position: that Mimosa was not a legitimate

17   Nevada corporation, and Naify was therefore exposed to California income tax.

18   The Estate wants to have its cake and eat it too.  It succeeded in largely avoiding the

19   state income tax, but now seeks a benefit as if it had failed to do so.  This Court concludes

20   that permitting the Estate to prevail would be inequitable.  The Estate has already been given

21   a deduction reflecting that actual value of the claim.

22   Therefore, this Court grants the pending motion on this independent ground as well.

23                                        **Conclusion**

24   For all the reasons explained above, the Government's motion for judgment on the

25   //

26   //

27   //

28   //

1    pleadings is GRANTED.

2          **IT IS SO ORDERED.**

3

4                                              _____

5    Dated: September 8, 2010                 CHARLES  R. BREYER
                                              UNITED STATES DISTRICT JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California